Filed 6/24/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| JERRY CRADDUCK, | |
| Plaintiff and Appellant, | G064325 |
| v. | (Super. Ct. No. PSC1907110) |
| HILTON DOMESTIC OPERATING COMPANY, INC., | O P I N I O N |
| Defendant and Respondent; | |
| LIBERTY MUTUAL INSURANCE COMPANY, | |
| Intervener and Respondent. | |

Appeal from a judgment of the Superior Court of Riverside County, Manuel Bustamante, Jr., Judge. Affirmed.

Gerald P. Peters and Todd C. Samuels for Plaintiff and Appellant.

McGuirewoods, Payam Khodadadi and Gregory J. DuBoff for Defendant and Respondent.

Yoka & Smith, Arpine Esmailian and Christopher Faenza for Intervener and Respondent.

\*          \*          \*

In the midst of trial in this personal injury case, plaintiff's attorney Todd Samuels, and his client, plaintiff Jerry Cradduck, failed to appear one morning, notifying the trial court of a medical emergency involving Samuels. A long course of events followed, including a mistrial. The court ultimately decided to dismiss the complaint due to Cradduck's and Samuels' failure to appear as ordered. The court's decision was based primarily on Samuels' failure to provide evidence of his medical condition[1] justifying his failure to appear. He did not offer such evidence until much later, during postjudgment motions. Additionally, the evidence showed Samuels had continued to work on other cases just days after specially appearing counsel represented that he was disabled to the extent that he could not speak. The court found Samuels' conduct sufficiently egregious that it ordered a reference to the State Bar of California.

In this appeal, Cradduck argues multiple errors. He contends the trial court abused its discretion in denying no less than six motions and by ultimately granting the defense's motion to dismiss. In doing so, he fails to adequately develop most of his legal arguments.

Based on the information the court had before it at the hearing where it dismissed the case, we find no abuse of discretion. Samuels had weeks prior to the dismissal hearing to submit evidence of his medical

---

[1] Numerous documents were filed under seal in this appeal because they mention Samuels' medical records and condition. But we cannot ignore these facts entirely; they are critical to the case, and Samuels has waived his privacy by placing his medical condition squarely at issue in this appeal. (See, e.g., *Vesco v. Superior Court* (2013) 221 Cal.App.4th 275, 279.) Nonetheless, we have endeavored to keep as much unnecessary detail as possible out of this opinion. The underlying documents in the record remain sealed.

condition and his unavailability. He failed to do so, forcing the court to rely on a scant evidentiary record that often conflicted with counsel's oral representations. While he finally submitted evidence with postjudgment motions, those motions failed to adequately meet the legal standard required to justify relief. Accordingly, we find no abuse of discretion and affirm the judgment.

During the proceedings, attorney Narine Mkrtchyan specially appeared twice on Samuels's behalf. During these appearances, she made numerous uncivil and disrespectful attacks on the court, including accusing the court of misrepresenting and ignoring evidence, and demonstrating bias. She ordered the court, at one point, to "stop making any rulings right now," and also interrupted the court and demanded the court "let me finish." Such conduct is reprehensible and untenable, and accordingly, we are referring Mkrtchyan to the State Bar of California for potential disciplinary action.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

I.

UNDERLYING FACTS

This is a personal injury case. Cradduck sued defendant Hilton Domestic Operating Company, Inc. (Hilton) for negligence arising out of his use of a spa at an Embassy Suites property in Palm Desert in 2019. The hotel was independently owned by defendant EHT ESPD, LLC (EHT) under a franchise agreement with a Hilton subsidiary. EHT later "had its business status forfeited by the California Secretary of State." Liberty Mutual Insurance Company (Liberty) intervened in the case as a defendant because of its potential liability as an insurer.

## PROCEDURAL HISTORY

### A. *Beginning of Trial*

Trial began in 2023 with jury selection on May 16 and 17. The matter proceeded with opening statements, during which the attorney representing EHT conceded the duty and breach elements of negligence. The only issues left, counsel stated, were causation and damages.

Plaintiff's first witness testified in the afternoon, concluding shortly after 3:00 p.m. The court asked for the plaintiff's next witness, but despite previous discussions between the court and counsel regarding witness availability, Samuels informed the court no other witnesses were available that day. The court asked if Cradduck could begin his testimony, since he was in the courtroom. Samuels was visibly upset. Cradduck testified for approximately 15 minutes before the jurors were excused and asked to return on Monday, May 22.

### B. *Motion for Mistrial Based on Opening Statement*

On Saturday, May 20, Cradduck filed a motion for mistrial based on comments by counsel in EHT's opening statement. Cradduck argued that although counsel had admitted negligence during its opening statement, two days later, it filed a motion to preclude him from presenting certain evidence, stating it had conceded negligence "'in its use and maintenance of the subject hotel'" but the jury still had to decide causation and damages. He claimed he had been "severely prejudiced in his ability to receive a fair trial by the misleading and untrue statement to the jury." The record does not reflect that Samuels made any objections during EHT's opening statement.

*C. Monday, May 22 Failure to Appear and May 23 Declaration*

On Monday, May 22, defendants appeared for trial. Neither Cradduck nor Samuels appeared. The court advised defense counsel that it had "received word this morning that Mr. Samuels had a medical emergency so that he could not be here." Samuels had not advised defense counsel of this emergency or that he would not be in court. Samuels' office had told the court that the medical emergency was "significant" and no time frame was provided for when he might return. The court ordered an eight-day continuance, with the jury to return on Tuesday, May 30. The court also scheduled a remote hearing for Wednesday, May 24, in the hope of learning more information from Samuels or someone else about his potential return date.

On May 23, Samuels filed a declaration. The declaration stated that on Sunday, May 21, around 6:00 p.m., he "suddenly began to feel extremely unwell and was taken to the emergency room" via ambulance. He remained in the emergency room for approximately 24 hours. Several tests were performed. Samuels was advised to follow up with his primary care physician if symptoms continued. "As I write this, I still am feeling extremely unwell. Given the state of my health, I unfortunately am unable to continue with the trial as presently scheduled." He apologized, and he further asked the court to grant the mistrial motion he had previously filed. The declaration offered no other information.

*D. May 24 Hearing*

At the hearing on May 24, Samuels did not appear, nor did Cradduck. Narine Mkrtchyan specially appeared for Cradduck. The court asked for an update on Samuels' condition, and Mkrtchyan replied that Samuels was "still very sick. [¶] He really needs medical leave for a month or

so to treat his medical condition." Mkrtchyan stated Samuels had been unable to appear at the hearing, and he had "a medical situation that is significant and is disabling to him at this point . . . it's significant enough that he cannot proceed to trial." She reiterated Samuels' request for a mistrial.

There was some discussion of Cradduck's earlier motion for mistrial, and at its conclusion, the court denied the motion.

With respect to Samuels' condition, the court noted that it had already granted a continuance of eight days. Samuels' actions suggested to the court that Samuels "wants to hit the reset button on this case." When asked, Mkrtchyan provided no specific information as to whether Samuels could not return the following Tuesday to resume the trial. She said he was still "very sick" and she reiterated that he needs medical leave of "at least a month." Mkrtchyan represented that "as an officer of the court, from my interaction with him over the phone, that he's not able to continue with the trial this week or next week because he is continuously on medical emergency situation." She added that as of that morning, he was going to go back to the hospital, and "might be in hospital right now."

After listening to Mkrtchyan's comments, the court stated the trial would resume on Tuesday, May 30. At that point, the court would see if Samuels appeared. The court clarified it was not questioning Samuels' credibility, but was "making logical inquiries based on the declaration that Mr. Samuels filed that was vague" and did not address the continuance that had already been granted. Samuels' declaration had left the court and defendants with "more questions than answers" and no timetable as to when Samuels might return. Given that Samuels' declaration included only

6

conclusory statements, it was an insufficient basis for the "drastic measure" of a mistrial.

Mkrtchyan's reaction to the court's statements was strongly negative, accusing the court of a "lack of compassion" that was "astonishing." She referred to both COVID-19 protocols and the Americans with Disabilities Act, and stated that Samuels "could have died" and the court and defense counsel were stating that his declaration was insufficient. Everyone, she said "should be ashamed at this point." She admonished those present to be aware of "federal guidelines and federal regulations" and to "follow the law." She repeated several times that everyone involved "should be ashamed" of themselves. She stated she would "file a further declaration with further proof of his disability under ADA which the court is obligated to accommodate." She did not file a further declaration on these topics at any point.

The court noted it would be derelict in its duties if it did not make further inquiry. As far as the court knew, Samuels had been released from the hospital at 6:00 p.m. on Monday, and he was feeling unwell. That was the only information before the court, and therefore it was unsure of the relevance of "the ADA lecture and COVID guideline lecture that you gave us." The court had not been dismissive of ADA requirements or COVID protocols; it simply had no evidence that either was relevant. "The court is operating in the dark here with this information." Everyone was ordered to return to court on Tuesday, May 30.

E.  *Lodged Medical Records*

On Friday, May 26, Samuels filed a notice of lodging medical records under seal. Whatever was lodged on that date is not included in appellant's appendix on appeal. The same records, however, were apparently

relodged later. The record includes an "after visit summary" for Samuels from Scripps Memorial Hospital's (Scripps) emergency department dated Sunday, May 21. The diagnosis was listed as "[c]hest pain, unspecified type" and "[p]alpitations." He was referred to a sleep medicine clinic and to outpatient cardiology. The next record is a report from an urgent care clinic dated Tuesday, May 23, that listed the diagnoses as "[i]nsomnia, unspecified" and "[a]nxiety disorder, unspecified." He was given a prescription for these ailments. Samuels was directed to return to the clinic in three days "if not better."

The next record is dated May 24 and is from the Scripps emergency department. The reason for the visit was listed as "[a]ltered mental status." The record stated a brain scan and blood tests were all normal. The doctor indicated a concern about a potential psychiatric issue, prescribed medication, and referred Samuels to a psychiatrist as an outpatient. No hospital admission was indicated; the record was called an After Visit Summary.

The other record that was apparently part of this filing was a May 26 doctor's note from the same physician Samuels saw in the Scripps emergency department, which stated Samuels had been seen and treated on May 25, 2023. "He may return to work on 06/12/2023. [¶] Mr. Samuels has been acutely hospitalized and is currently under the care of a specialized team of providers at Scripps La Jolla. He has a serious medical condition which requires immediate and indefinite significant medical treatment and care. Due to this unforeseen medical condition, it is impossible for him to continue with his pending trial."

8

*F. May 30 Hearing*

On May 30, defendants appeared at trial, as did the jury. Cradduck did not appear, nor did Samuels. The court noted it had received and reviewed the lodged medical records, but to protect Samuels' privacy, it did not discuss the contents in any detail. The court noted no declaration was attached. The court stated that having reviewed the records, it took the proper action the previous week by excusing the jury until the following Tuesday. The court did not "find any good cause for an additional continuance." The court had not been provided any information that would justify a continuance longer than the eight days already provided. "We need to operate in facts and we seem to be lacking on those."

The court issued a tentative ruling. "There's an OSC to continue, unless we hear from anyone as to where plaintiff is this morning, there's an OSC trailing pursuant to local rule 3401.[2] The court does find at this time that plaintiff has failed to comply. They filed a motion for mistrial. That was already heard, and Miss Mkrtchyan represented she had authority to argue that. And then the next day, it was when Mr. Samuels had—did not feel well, and we have not heard anything else other than the declaration filed on, I think, last Monday, May 22nd in the afternoon. So with that, the court does

[2] The Superior Court of Riverside County, Local Rules, rule 3401 (rule 3401) sets forth various pretrial rules about exchange of documents, exhibits, motions in limine, and other matters. Paragraph 11 states: "Parties or their counsel who fail to comply with any portion of this rule without good cause are subject to sanctions, including but not limited to orders striking all or part of that party's pleading, dismissing all or part of that party's action, entering a judgment by default against that party, postponing the trial, or imposing monetary, evidentiary, or issue sanctions. Code Civ. Proc., section 572.5." (Rule 3401.)

not find there's good cause to continue the matter or to declare a mistrial here. I know there's been a request for a mistrial, but mistrial is an extreme step, and the court doesn't feel—the only prejudice coming to the parties, and that's what the court needs to consider, it's not the convenience of the court. For a mistrial, there has to be extreme prejudice to the parties, either through something through their counsel or only prejudice being brought here is by Mr. Samuels not being here and Mr. Cradduck not being here, it seems to be self-inflicted. It seems like they made the decision for the court. [¶] So there is an OSC that's been trailing that the court always alludes to. And pursuant to that, . . . this court's tentative is to dismiss the complaint of Mr. Cradduck."

Defendants then made an oral motion to dismiss. As the defendants and the court were discussing various matters, Mkrtchyan appeared remotely (rather than in person, as the court had ordered) and several minutes late. The court informed her of its tentative. She asserted that Samuels "is in the hospital under specialized care and requires significant medical treatment." She again requested a continuance for another "week or until Mr. Samuels recovers from hospital" or a mistrial.

The court noted that its hands were somewhat tied. Mkrtchyan wanted to discuss the substance of medical records that she had asked to place under seal. The court found "[s]ome of the information recited by Miss Mkrtchyan . . . in conflict with the records that are under seal . . . ." Mkrtchyan wanted the court to take judicial notice of the fact that Samuels was in the hospital, but "the only information that the court is aware of at this time is that Mr. Samuels has been previously discharged from the hospital." The court stated that given the nonappearance of Samuels or

10

Cradduck, it would declare a mistrial, discharge the jury, and then decide on its next steps.

After the jury was discharged, discussion continued. The court noted the June 12 return to work date in the doctor's note lacked "much further explanation." Upon further review, the court stated the lodging of Samuels' medical records was not in compliance with the California Rules of Court, because it lacked a redacted public version that also should have been served on opposing counsel.

With respect to its tentative, the court stated it was always reluctant to have a case resolved on a procedural issue. "But we have given opportunity for Mr. Samuels to be here. Wednesday the court even went as far as to say . . . for everyone to appear by phone. This morning, Mr. Samuels could have called in. You certainly had no issue, Miss Mkrtchyan, calling in and appearing by phone, but the court is not aware of any information as to why Mr. Samuels cannot make a phone call. [¶] It's really Mr. Samuels that has put the court in a very difficult position here." The court was still inclined to follow its tentative.

Mkrtchyan was again asked for her response. She stated again that medical records proved "conclusively that [Samuels was] still in the hospital." She further stated, "He's disabled. He cannot talk." The court again noted her representations were in conflict with the records filed under seal. Mkrtchyan insisted that "the court is misrepresenting the record that Mr. Samuels has been discharged." She insisted again "Mr. Samuels is still in the hospital," and stated the court should call his doctor.

Mkrtchyan then interrupted the court when it attempted to speak and demanded the court "let me finish." She proceeded to state: "I'll go after this and I will make it a federal case. Okay? This is abuse of discretion.

11

This is arbitrary, and this is frankly reportable. I cannot believe I have to even make this argument. And there's no rule of court that allows [the court] to misrepresent the record and ignore records filed under seal. There is no rule of court such as that. You know." She then made an oral motion under Code of Civil Procedure section 170.1[3] "because of clear prejudice to plaintiff. You are furthermore not allowed to make any more rulings in this case because you are frankly prejudiced toward plaintiff or his counsel. You are surely biased. This is CCP 170.1. I'm making that declaration right now, and you are to stop making any rulings right now until that motion is heard by the supervising judge of Riverside County." She further admonished the court stating: "You are not above the law." When she finished, the court thanked her.[4] She then left the hearing.

The court again noted that Mkrtchyan's representations were in conflict with Samuels' prior declaration and the documents filed under seal.

The court continued the matter to 10:00 a.m. the next morning as an "OSC as to why the matter should not be dismissed." Defendants asked for leave to file written briefing on their oral motion to dismiss. The court agreed if they could file by the end of business that day, and defendants stated they could do so. Defendants filed a memorandum of points and authorities in support of dismissal that afternoon. The focus of their argument was section 581, subdivision (*l*), which allows a court to dismiss a case when a party fails to appear at trial.

---

[3] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

[4] This is one of the many occasions throughout this case where the court conducted itself with admirable restraint.

## G. *May 31 Hearing and Recusal Motions*

On May 31, both Samuels and Mkrtchyan appeared remotely. Defense counsel appeared in person. The court stated that although it had not been served, it had received electronic notice that motions had been filed under sections 170.1 and 170.6.[5] Accordingly, the court stayed further action and continued the hearing to June 7.

On June 5, the court struck the disqualification motion. The motion, the court stated, "[F]ail[ed] to set forth any facts that constitute legal grounds for the disqualification of this Court as set forth in . . . § 170.1. Instead, the motion is based upon wholly unsupported allegations including that the court is biased because the court has made rulings and comments with which Plaintiff and his specially appearing counsel disagree."

## H. *June 7 Hearing*

On June 7, Samuels and defense counsel appeared remotely at the scheduled hearing. The court stated it was setting a new OSC as to why the case should not be dismissed for failure to prosecute.

Samuels asked to be heard. He stated he "had a sudden serious medical emergency that occurred during the trial, and I'm still treating for it, and it's going to take me time to recover from this." He asked the court to set a new trial date 90 days out. He offered to provide further medical records under seal. The court informed Samuels he was welcome to submit more records.

---

[5] Among other things, Mkrtchyan's declaration in support of the disqualification motion stated the lodged medical "records included a doctor's letter substantiating Mr. Samuels is still in the hospital." This statement does not accurately reflect the doctor's note, which was quoted in full above.

Defense counsel advised the court that it had learned that Samuels appeared remotely the previous Friday (presumably June 2) in San Diego County to argue a demurrer. June 2 was two days after the previous hearing in the instant matter. Samuels wore a suit for his San Diego appearance and did not state anything about any medical reason as to why he could not appear.

Another hearing was set for July 14. The court had several matters to consider: the prior OSC under local rule 3401, the one the court had set that day regarding failure to prosecute, and the defense's motion to dismiss. The court also set a briefing schedule.

## I. *Additionally Lodged Records*

On June 9, Samuels lodged additional medical records. He again failed to file a redacted version. The records were returned to Samuels a week later for noncompliance with California Rules of Court, rule 2.551. Nothing is included in the appellant's appendix, but we can glean from the court's later discussion that the only record not already lodged was a doctor's note dated June 8, which was apparently resubmitted later.

This letter was from a neurologist and psychiatrist who stated that Samuels was under his care as of June 1. "Mr. Samuels had gone to Urgent Cares and Emergency Rooms over four times during the last 15 days and was eventually hospitalized on 05/26/2023 in a severe life-threatening condition. [¶] After being discharged from the hospital his condition stabilized but he is still not well enough to participate in any kind of trials." No further information was provided.

## J. *Briefing on Pending Motions*

On July 5, Cradduck filed an opposition purporting to address all three pending matters, although it failed to discuss defendants' motion under

section 581, subdivision (*l*). The opposition emphasized the "life-threatening" and "serious" nature of Samuels' medical condition and argued that the case should not be dismissed, and Cradduck should not be responsible for the costs of the mistrial. He also stated he had associated outside counsel to proceed with trial.

In response, defendants argued that Cradduck had failed to make an evidentiary showing that Samuels could not continue with trial. It noted Cradduck's failure to discuss section 581, subdivision (*l*) and Cradduck and Samuels' failure to abide by court orders, such as to appear in person on May 30.

Defendants also attached documents undercutting representations on Samuels' behalf that he was disabled, unable to speak, and in a life-threatening emergency during the relevant time period. Those documents discussed several matters in which Samuels had been active during this time period.

One set of documents demonstrated that on June 1, Samuels exchanged e-mails with opposing counsel in another Riverside County matter, stating that he was "still engaged in trial." They discussed a trial continuance based on the trial in which he was purportedly engaged as well as one opposing counsel had coming up.[6]

On June 2, in the same Riverside County matter, Samuels e-mailed counsel a "revised stipulation executed by me" to continue trial in that

---

[6] June 1 was two days after the May 30 hearing at which Samuels failed to appear as ordered, a mistrial was entered, and Mkrtchyan claimed that medical records proved "conclusively that [Samuels was] still in the hospital." She had further stated at that hearing that Samuels was "disabled. He cannot talk."

case. That stipulation represented to the court that Samuels was "currently engaged in trial." Again, a mistrial had already been declared in the instant case.

Also on June 2, in another matter in San Diego County, Samuels appeared remotely for a hearing on a demurrer. Defense counsel contacted the court clerk in that matter, who informed counsel that Samuels had appeared via video conference, wearing a suit, and he did not mention anything about a medical problem. Nothing about his appearance suggested he was ill.

Samuels filed papers in other matters on June 8 and June 16, and made a remote appearance on June 20.

K. *July 14 Hearing*

At this hearing, the court heard argument on the pending matters. Samuels represented that he was "discharged from the hospital after multiple days on May 30" and appeared in court on May 31.

With respect to Samuels' medical records, the court found a "narrow waiving of the right of privacy" because Samuels' medical condition was directly at issue. The court discussed what it had reviewed, summarizing the initial lodging of records mentioned previously. The court noted it did not have any records indicating a May 26 emergency room admission. The June 8 physician letter did not indicate the dates of hospital admission or discharge.

Defense counsel discussed the evidence it had submitted regarding Samuels' activity in other cases, particularly those that misrepresented that he was in trial after the mistrial had been entered. The court stated that Mkrtchyan's dire representations about Samuels' condition appeared to apply only to the instant case, because if an attorney is in a dire

16

condition, that attorney generally does not meet and confer on other cases or object to trial continuances.

The court also noted that Cradduck was not present, and said that what had weighed on the court most in preparing for the instant hearing was the prejudice to him, as ultimately, he would be the one most affected.

Samuels represented to the court that he was admitted to the hospital May 26 and was discharged on May 30. "This was a very serious medical condition that I have. I mean, I was—I went to the emergency room on May 25th. I was admitted May 26th. I wasn't discharged until May 30th."[7]

The records Samuels previously submitted showed an after-visit report from the emergency department dated May 24, a May 26 doctor's note noting Samuels "has been acutely hospitalized" without noting the dates, and a June 8 note from a physician who started treating him on June 1 that stated Samuels "was eventually hospitalized on 05/26/2023" without noting a discharge date. He also represented his papers to the other court regarding the continuance stated he "was recently engaged in trial." This document is in the record, and uses the language "currently engaged in trial."

Samuels asked the court for another opportunity to submit medical records. The court reminded the parties that at the June 7 hearing, Samuels had stated he would submit records before a hearing, and a briefing schedule was set. The only thing Samuels submitted was the one-page June 9 note. The court stated it could not look at the situation only in terms of

---

[7] Samuels did not submit any documentation supporting this hospital admission until much later, during postjudgment motions. A visit summary indicated he was admitted to a psychiatric hospital on May 26 "on a voluntary status for stabilization." His discharge diagnosis was "anxiety disorder."

Samuels' representations, but would also consider the context in which they had arisen. The court noted Samuels' unhappiness with having to call his client to the stand on the first day of trial as well as defendants' concession of some elements of negligence. As an observer, it appeared to the court that Samuels was not happy with the first day of trial. The court also considered the first motion for mistrial, since denied, in the context of Samuels' failure to appear.

The court took reasonable steps when Samuels reported his medical emergency, providing an eight-day continuance. But "the court has come to the conclusion that the evidence shows a strong likelihood and possibility that counsel, Mr. Samuels, essentially did not like how things were going, and hit the reset button, and did not intend on coming back until a mistrial was declared." The records the court had reviewed showed good cause for a short continuance, but not for the mistrial the court was forced to declare. Therefore, it was the court's tentative that the motion to dismiss be granted, with the issue of costs to be considered at a later time. After hearing further argument, the court ruled on the pending matters.

The court clarified that it disagreed with Samuels' claim that he was happy with how trial was going. His claim was strongly undercut by the motion for mistrial he filed that weekend. As for his medical condition, the court had very limited information when Cradduck and Samuels failed to appear on May 22, but it nonetheless granted an eight-day continuance. On May 24, Mkrtchyan represented that Samuels could no longer continue, mentioning COVID and the Americans with Disabilities Act. The court had no information to know whether any of those statements were true or not.

Samuels was back in the emergency room on May 25, as supported by submitted records. He represented he was admitted to the

18

hospital between May 26 and May 30, but Samuels had not submitted records on this point. The mistrial was granted on May 30, as the jury could not be held indefinitely. Samuels did not appear in court until after the mistrial was granted, on May 31. The court found this context relevant and important. "This appears to be a deliberate attempt to force a mistrial." The court also noted that the effect of Samuels' condition on his ability to work seemed to be limited to the instant case. He communicated with counsel, submitted documents, and represented that he was still engaged in trial after the mistrial had been declared. He had ample time to submit medical records. While Samuels had communicated with counsel in other matters, he had never communicated with opposing counsel in the instant case as a matter of professional courtesy.

The court granted the motion to dismiss filed by defense counsel, and also dismissed the case on the OSC for failure to comply with local rule 3401. The court vacated the OSC on failure to prosecute. After further discussion, the court decided that a referral to the State Bar of California was appropriate. The court found that Samuels made "deliberate misrepresentations" when dealing with other counsel as well as his conduct in the instant matter. Judgment was entered in August 2023.

Cradduck filed various postjudgment motions, all of which were denied, and which we will discuss below as pertinent. He now appeals.

## DISCUSSION

### I.

### GENERAL PRINCIPLES AND STANDARD OF REVIEW

"'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not

19

only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.)

In short, that means Cradduck has the burden of demonstrating the trial court made a mistake – and not just any mistake, but one that would warrant reversal. To warrant reversal, an error must meet the standard we refer to as "prejudicial." That means the error '"has resulted in a miscarriage of justice.'" (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.) Not all errors meet this standard.

Cradduck concedes the standard of review for all of his postjudgment motions is abuse of discretion. Under the abuse of discretion standard of review, "[t]he appropriate test . . . is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479.) To demonstrate an abuse of discretion, the appellant bears the heavy burden of showing the court had no reasonable basis for its action. (*Common Cause v. Stirling* (1983) 147 Cal.App.3d 518, 522.)

To the extent we review the court's factual findings, we do so for substantial evidence. "Under that standard of review, 'the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact.' [Citation.] In so doing, we accept all evidence that supports the judgment, disregard contrary evidence, and draw all reasonable inferences to uphold the judgment. [Citation.] 'It is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in

20

the testimony, and we will not disturb the judgment if there is evidence to support it.'" (*Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1173.)

## II.

### "UNAUTHORIZED PLEADINGS"

Cradduck's first legal argument is a claim that in connection with the OSCs, "defendants made three unauthorized filings of pleadings."

The first document is a May 30 memorandum of points and authorities in support of dismissal. Cradduck asserts, without evidence, that this was "mislabeled" as being in support of the motion to dismiss, but states there was no written motion to dismiss. The record is clear on this. The motion to dismiss was oral, and the court explicitly granted defendants permission to file a brief in support.

The next documents are defendants' reply to Cradduck's opposition to the OSC regarding dismissal and a declaration in support of it. Cradduck's complaint about these two documents is that they introduced new evidence. That may be true, but it does not render the pleadings themselves "unauthorized." We shall address the evidentiary issue below. Reply briefs and declarations are authorized by the California Rules of Court and Code of Civil Procedure. (§ 1005, subd. (b); Cal. Rules of Court, rule 3.1115.)

We find no error here, and certainly no prejudicial error mandating reversal.

## III.

### "NEW EVIDENCE"

Cradduck's next contention is that the court improperly relied on evidence submitted in defendants' reply brief. Apparently this refers to evidence regarding Samuels' state of mind after the first day of trial, and his

21

participation in other cases during his period of illness. Cradduck does not indicate any objections he made to this evidence at the time it was submitted. "Plaintiff's failure to object at the trial court level to defendants' evidence at that stage waived the issue for appellate review." (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140.)

Even if this issue was not waived, the rule against bringing new evidence before the court in a reply is not as inflexible as Cradduck would make it seem. New evidence on reply may be considered by the trial court when the opposing party has notice and a chance to respond. (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1183.) Here, as the trial court pointed out, all of the information defendants sought to bring forth was within Samuels' personal knowledge. The court gave Samuels the opportunity to explain himself at the July 14 hearing, and he did so.[8] We find no reversible error or miscarriage of justice.

## IV.

### REQUEST FOR CONTINUANCE/JUDGMENT

Cradduck next argues the court abused its discretion by denying his request for a continuance and entering judgment against him.

The first issue here is that Cradduck never made a formal request for a continuance. Cradduck duly repeats hornbook law on the applicability of continuances, but he fails to point out when and how he sought one. The record does not reflect that Cradduck or any of the attorneys representing him ever filed a request for a continuance, which "must" be

---

[8] We need not consider Cradduck's arguments regarding the import of this evidence, as that is not relevant to its admissibility.

22

presented as "a noticed motion or an ex parte application." (Cal. Rules of Court, rule 3.1332 (b).)

During the proceedings various dates were tossed about as to when Samuels might be able to return to work (Mkrtchyan, on May 24: "a month or so" and the May 26 doctor's note: "He may return to work on 06/12/2023"). At the May 30 hearing, after the court issued its tentative, Mkrtchyan orally requested mistrial or a continuance "for a week or until Mr. Samuels recovers from hospital and becomes available as sole counsel of record."

Still, none of these mentions of a continuance is a written, noticed motion or ex parte application *required* by the California Rules of Court. We conclude there was no error in failing to grant a continuance that was never properly requested. (*Reales Investment, LLC v. Johnson* (2020) 55 Cal.App.5th 463, 469.)

As to the court's decision to "enter[] judgment" against Cradduck, he offers no separate argument on this point, which is enough for this court to deem the argument waived. (*County of Sacramento v. Lackner* (1979) 97 Cal.App.3d 576, 591; Cal. Rules of Court, rule 8.204(a)(1)(B).) We address it briefly. The court dismissed the action on two grounds. First, the court dismissed the case based on section 581. Second, the court dismissed the case due to plaintiff's failure to comply with the court's orders pursuant to local rule 3401. Either reason, if valid, is grounds for dismissal.

Under section 581, subdivision (*l*), "The court may dismiss, without prejudice, the complaint in whole, or as to that defendant when either party fails to appear at the trial and the other party appears and asks for the dismissal."

23

The record[9] demonstrates that both Cradduck and Samuels failed to appear as ordered on May 30, 2023. The court had ordered that the parties and counsel "be present in person." The court, at that point, had already granted an eight-day continuance. Samuels had offered the court little to rely on in the way of actual evidence. He submitted two emergency room after-visit summaries, dated May 21 and May 24. Both reflected that Samuels had been discharged. He submitted a document from an outpatient clinic dated May 23. These documents were submitted without a declaration attesting to their veracity or authenticity. And Samuels submitted two doctor's notes, one dated May 26 and one dated June 8. While both doctor's notes stated he could not work, none of them provided specifics. Neither of the doctor's notes were in the form of a declaration, nor were they signed under penalty of perjury. They had, at best, limited value, but this is what the trial court had before it in terms of cold, hard facts.

What the trial court did not lack were unsupported representations. Some of these, such as Samuels' initial declaration, were vague, such as those in Samuels' May 23 declaration. He was "feel[ing] extremely unwell" on that date. He offered no specifics. This was the only sworn testimony Samuels submitted prior to the court dismissing the case.

Mkrtchyan represented to the court on May 24 that Samuels was "very sick" with a "disabling" condition and needed "leave for a month or so." After the court stated trial would resume on May 30, Mkrtchyan offered more vague, unsupported statements, including that somehow the Americans with

[9] In reviewing whether the court properly dismissed the case on July 14, we consider only evidence the court had before it at the time. We ignore Cradduck's references to evidence placed before the court for the first time in postjudgment motions.

24

Disabilities Act and/or COVID-19 were relevant, and that Samuels "could have died."

On May 30, Cradduck and Samuels violated the court's order to appear in person. Mkrtchyan appeared remotely, and she had yet more unsupported representations to offer the court. Samuels was "still in the hospital," which she claimed was "conclusively" supported by medical records. (It was not.) She also asserted that he was "disabled" and "cannot talk."

Cradduck's opposition to the pending matters emphasized the "life-threatening" and "serious" nature of Samuels' medical condition without providing further evidence in support of these claims.

The other evidence the court had to consider was that despite the dire nature of Samuels' asserted medical condition, two days after Mkrtchyan's representation that Samuels was "disabled" and "cannot talk" Samuels was exchanging e-mails with opposing counsel representing he was "still engaged in trial,"despite the fact that a mistrial had already been declared. A representation to the court that he was "currently engaged in trial" was submitted to a court the following day.[10] That same day, he appeared at a remote hearing to argue a demurrer, wearing a suit and mentioning nothing of a medical condition, with no suggestion that he was ill.

Additionally, the court had evidence before it that Samuels, despite Mkrtchyan's claims to the contrary, was not at all happy with how the first day of trial had proceeded. He did not want to call his client to the stand on the first day of trial, and he was disturbed that some of his evidence

---

[10] Samuels flatly misrepresented this statement at the July 14 hearing, stating he represented to the other court that he was "*recently* engaged in trial." The document he filed is in the record and says "*currently* engaged in trial." (Italics added.)

had been undercut by defendants' concession of certain elements of negligence. Happy attorneys do not generally file motions seeking mistrials after the first day of trial.

All of the court's factual findings were supported by substantial evidence, including Samuels' and Mkrtchyan's representations to the court, the scant medical records offered, the evidence of Samuels' activity in other cases, and filings in the instant case including the motion for mistrial. The court found the context and Samuels' course of conduct appeared to be a deliberate attempt to force a mistrial. The court's ultimate finding that Samuels had "fail[ed] to appear" on May 30 without good cause was supported by substantial evidence. Cradduck's own failure to appear is without any documented justification whatsoever.

The court did not abuse its discretion by granting the motion to dismiss pursuant to section 581, subdivision (*l*). We need not belabor the violation of the local rules of court as an alternate grounds for dismissal, but based on the same evidence, dismissal was also proper on that ground.

V.

MOTION FOR RECONSIDERATION/RELIEF UNDER SECTION 473

The next contention Cradduck offers is that the court abused its discretion by denying his motion for reconsideration or relief under section 473. Cradduck filed that motion on July 26, arguing that he had new or different facts to offer. In his opening brief, however, he offers no reasoned legal argument as to why the court erred by denying his motion. He briefly discusses the evidence he submitted, quotes from the motion, repeats that the illness of an attorney is good cause for a continuance, and moves on. His reply brief appears to be a restatement of the opening brief. The failure to support a contention with citations to authority and reasoned argument is grounds

26

for deeming the argument waived, which is appropriate here. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

Although waiver is appropriate, we address the substance briefly. Section 1008, subdivision (a) states, in relevant part: "When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order."

"A party seeking reconsideration also must provide a satisfactory explanation for the failure to produce the evidence at an earlier time." (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.) "The burden under section 1008 is comparable to that of a party seeking a new trial on the ground of newly discovered evidence: the information must be such that the moving party could not, with reasonable diligence, have discovered or produced it" at the original hearing. (*Id.* at pp. 212–213.)

The evidence Cradduck points to that he submitted in conjunction with the motion for reconsideration was Samuels' medical records, and sworn declarations from Samuels, his wife, and one of his doctors. He does not offer any argument why any or all of this evidence, with reasonable diligence, could not have been presented at or prior to the July 14 hearing. Accordingly, he did not make the requisite showing necessary for a motion for reconsideration under section 1008.

In a half-page argument in his opening brief and repeated in his reply brief, Cradduck contends the court should have granted relief under

27

section 473, subdivision (b).[11] That statute allows a court to relieve a party or their attorney from an order granted due to the attorney's "mistake, inadvertence, surprise, or excusable neglect." (§ 473, subd. (b).) But it is improper to raise section 473, subdivision (b) relief in conjunction with a motion for reconsideration.

Section 1008, subdivision (e) states: "This section specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions, and applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final. No application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section." Thus, section 1008 is jurisdictional, and section 473, subdivision (b)[12] does not exempt applications for relief under section 1008's requirements. (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 840.) We find no error.

VI.

MOTION FOR NEW TRIAL

Cradduck also contends the court erred by denying his motion for new trial. Like the motion for reconsideration, this argument is waived due to the failure to provide reasoned legal argument. (*Benach v. County of Los*

---

[11] Cradduck raises section 473, subdivision (b) numerous times. The same reasoning applies throughout.

[12] Were we to consider section 473, subdivision (b), we would question whether relief is available in light of the trial court's finding that Samuels' actions after his medical emergency were both "deliberate but also deceitful." We need not address this, however.

*Angeles, supra,* 149 Cal.App.4th at p. 852.) Again, we provide a brief discussion in the interests of justice.

Cradduck states that he moved for a new trial on the grounds of "'irregularity in the proceedings . . . or any order of the court or abuse of discretion by which either party was prevented from having a fair trial.'" (§ 657, subd. (1).) Cradduck's grounds were based on Samuels' illness. The trial court rejected Cradduck's claim, finding that "there is significant evidence that calls the veracity of Mr. Samuels's explanation into question, evidence which demonstrates that Mr. Samuels was participating in litigation in other courts during the time he was alleged to be suffering from an illness that kept him from appearing for trial." As we discussed above, we agree.

Cradduck states: "The relevant question is whether Cradduck suffered prejudice as a result of the erroneous denial of his motion to continue the trial." This, of course, assumes much. But as we have already discussed, no such motion to continue the trial existed. Accordingly, it was not erroneous to deny Cradduck's motion for new trial.

VII.

MOTION TO VACATE/SET ASIDE THE JUDGMENT

In an argument of less than one page, supported only by boilerplate citations on continuances, Cradduck argues the court erroneously denied his motion to vacate and set aside the judgment. He again offers no reasoned or developed argument on this point, and the argument is waived. (*Benach v. County of Los Angeles, supra,* 149 Cal.App.4th at p. 852.) In any event, this motion was procedurally doomed due to Cradduck's failure to request "another and different judgment entered." (§ 663; *Payne v. Rader*

29

(2008) 167 Cal.App.4th 1569, 1575.) The court did not abuse its discretion by denying this motion.

## VIII.

### DISQUALIFICATION MOTION

Cradduck contends the court wrongly struck the affidavit to disqualify. This is not an appealable order; the sole remedy for challenges to disqualification decisions is via writ of mandate. (§ 170.3, subd. (d).)

### DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal. The clerk of the court is directed to send a discipline referral form to the State Bar of California with regard to the conduct of Narine Mkrtchyan, state bar number 243269, regarding her verbal attacks on the trial court. Attached to the referral form, the clerk shall include a copy of this opinion and pages 477–480 and 499–524 of the reporter's transcript. Because the trial court already reported Samuels to the State Bar, we find no need for a second referral.

MOORE, ACTING P. J.

WE CONCUR:


DELANEY, J.


GOODING, J.